

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-26-00026-CV

IN THE INTEREST OF I.C. AND K.C., CHILDREN

On Appeal from the County Court at Law No. 2
Gregg County, Texas
Trial Court No. 2024-1272-CCL2

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

# MEMORANDUM OPINION

The Texas Department of Family and Protective Services filed a petition to terminate Father's parental rights to his child, Ian.[1] The trial court terminated Father's parental rights after finding that he (1) "knowingly placed or . . . allowed the child to remain in conditions or surroundings [that] endanger[ed his] physical or emotional well-being," (2) "engaged in conduct or knowingly placed the child with persons who engaged in conduct [that] endanger[ed his] physical or emotional well-being," (3) "constructively abandoned" Ian, (4) "used a controlled substance . . . in a manner that endangered [Ian's] health or safety" and either (a) "failed to complete a court-ordered substance abuse treatment program" or (b) "continued to abuse a controlled substance" after completion of a court-ordered substance abuse treatment program, and (5) that termination of Father's parental rights was in Ian's best interests.[2] *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (b)(2) (Supp.).

On appeal, Father argues that the evidence was insufficient to support the trial court's findings. Because we conclude that the legally sufficient evidence supported the trial court's ground D, ground E, and best-interest findings, we affirm the trial court's judgment.

## I. Standard of Review

"Proceedings to terminate the parent–child relationship implicate rights of constitutional magnitude that qualify for heightened judicial protection." *In re A.C.*, 560 S.W.3d 624, 626 (Tex. 2018). The United States Supreme Court has emphasized that "the interest of [a] parent[]

---

[1]We use pseudonyms to protect the identity of the child. *See* TEX. R. APP. P. 9.8.

[2]Although Mother's parental rights to Ian and her other child, Kaleb, were also terminated, Mother voluntarily relinquished her parental rights and does not appeal. Kaleb is not Father's child.

2

in the care, custody, and control of their child[] . . . is perhaps the oldest of the fundamental liberty interests recognized by th[e] Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality op.). As a result, "[w]e strictly construe involuntary termination statutes in favor of the parent." *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012).

For this reason, "[i]nvoluntary severance of parental rights thus requires 'clear and convincing evidence' that termination is warranted and in the child's best interest[s]." *In re A.C.*, 560 S.W.3d at 626 (quoting TEX. FAM. CODE ANN. § 161.001; *Santosky v. Kramer*, 455 U.S. 745, 748 (1982)). "Clear and convincing evidence" is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (Supp.); *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam). Therefore, this Court is "required to engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights." *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, '"the rights of natural parents are not absolute; protection of the child is paramount."'" *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2015, no pet.) (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994))). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.)).

3

"[T]he appellate standard for reviewing termination findings is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." *In re A.C.*, No. 06-25-00084-CV, 2026 WL 878798, at*2 (Tex. App.—Texarkana Mar. 31, 2026, no pet.) (mem. op.) (first alteration in original) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). "Both legal and factual sufficiency review deal with whether 'a reasonable factfinder could form a firm belief or conviction,' but there is a difference between legal and factual sufficiency." *Id.* (quoting *In re A.C.*, 560 S.W.3d at 631).

For legal sufficiency, "we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that" termination of the parent-child relationship was in the best interests of the child. *In re L.E.S.*, 471 S.W.3d at 920 (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *In re J.P.B.*, 180 S.W.3d at 573).

By comparison, when reviewing "factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine "'whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about

4

the truth of the . . . allegations."'" *Id.* (alteration in original) (quoting *In re H.R.M.*, 209 S.W.3d at 109 (quoting *In re C.H.*, 89 S.W.3d. at 25)). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). To make this determination, we "undertake '"an exacting review of the entire record with a healthy regard for the constitutional interests at stake."'" *Id.* (quoting *In re A.B.*, 437 S.W.3d at 503 (quoting *In re C.H.*, 89 S.W.3d at 26)).

## II.     The Evidence at Trial

Ian was born in January 2022, and was four by the time of trial. Jhazmyne Johnson, a caseworker for the Department, testified that the Department received an intake against Mother on May 2, 2024, which alleged that Mother was "not following up with the medical appointments for the children," but that the Department became concerned about drug use during its investigation into the allegation. Kenneth Reine, a senior laboratory manager for Quest Diagnostic Drug Testing Laboratory, testified that Mother had tested positive for cocaine and marihuana metabolite on July 15, 2024, and cocaine on August 21, 2024. Johnson testified that she attempted to speak with Father but could not because he had been incarcerated.

Stephanie Leatch, a permanency specialist with 4Kids4Families, testified that Father was eventually released from jail and had family-service plans that were approved by the trial court on February 13, 2025, and July 10, 2025. Leatch testified that Father's family-service plan required him to have financial stability, maintain a residence, and remain drug free. Reine

5

testified that Father tested positive for methamphetamine and cocaine on May 21, 2025, and methamphetamine and marihuana metabolite on June 27. According to Leatch, Father had completed the cognitive and drug assessments, psychological evaluation, and parenting class portions of his family-service plan. Leatch also said that Father was undergoing substance-abuse counseling at the time of trial because of his drug-test results.

Leatch testified that Father was initially incarcerated "during [family] based safety services" "on a U. S. [sic] Marshal's detainer," and was again later incarcerated in the Gregg County jail for unlawful possession of a firearm by a felon "between October and December 2025," but was released on bond and was out of jail for "long stretches of this case." As a result, Leatch said that Father had "ample opportunity" to complete his family-service plan. Leatch said that she remained in contact with Father "for a few months" and that Father was required to undergo random drug testing but failed to appear for the Department's requested drug tests on July 29, August 6, September 25, and December 17, 2025, as well as January 16 and February 11, 2026. Leatch also testified that Father was given a second chance for his missed December drug test on December 22, but Father refused to participate. Leatch testified that each missed drug test resulted in a presumed positive result. According to Leatch, Father had other pending charges for possession of marihuana and refusing to identify himself as a fugitive and could not provide Ian with a safe environment.

Leatch testified that Father lacked transportation but was aware of the trial date and had often appeared with his attorney for past hearings. Leatch testified that Father had reached out to

her by text message on the night before trial and that she responded by reminding him of the trial the following morning. Even so, Father did not appear for trial.

Johnson and Leatch testified that a parent's confinement could impair a child due to lack of stability since the jailed parent could not ensure the child a safe environment in their absence. As an example, Johnson testified that incarceration made it impossible for a parent to shield a child from people under the influence of drugs. Leatch added that incarceration could damage the emotional bond with a child and could lead a child to develop separation anxiety. Johnson also said that parental drug use could lead to the inability to "complete daily tasks for the child[]" or meet the child's "cognitive needs daily," and placed the child in danger of emotional or physical abuse.

Leatch testified that Ian was placed in a foster home with parents who wished to adopt him. Leatch said that she had visited Ian in the foster home, which was safe and appropriate, and that Ian was doing well in school. According to Leatch, Ian was bonded to his foster parents, who were financially stable and provided for his medical and dental needs. She also added that Father had not seen Ian since his placement and had only made telephone contact once for "five to six minutes." As a result, Leatch testified that it was in Ian's best interests that Father's parental rights be terminated.

Jackie Eylar, the program director for East Texas Court Appointed Special Advocates (CASA), testified that Ian was thriving in his current placement, which was safe and appropriate. According to Eylar, Ian was bonded to his foster parents, who were also bonded to him and

wished to adopt Ian and his sibling. Eylar also agreed that termination of Father's parental rights was in Ian's best interests.

## III. Sufficient Evidence Supports the Ground D and E Findings

In his first point of error, Father argues that the trial court erred by its grounds D, E, N, and O findings. "Generally, '[o]nly one predicate ground and a best interest finding are necessary for termination, so "a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground."'" *In re C.C.*, 720 S.W.3d 41, 57 (Tex. App.—Texarkana 2025, no pet.) (alteration in original) (quoting *In re M.P.*, 639 S.W.3d 700, 702 (Tex. 2022) (per curiam) (quoting *In re N.G.*, 577 S.W.3d at 232)). "Termination on grounds D or E 'has consequences for termination of parental rights as to children in a future proceeding.'" *Id.* (quoting *In re Z.M.M.*, 577 S.W.3d 541, 542 (Tex. 2019) (per curiam) (citing TEX. FAM. CODE ANN. § 161.001(b)(1)(M))). "Therefore, 'due process and due course of law require that the court of appeals review the legal and factual sufficiency of the evidence supporting a trial court's order of termination under Subsections 161.001(b)(1)(D) and (E) when challenged on appeal.'" *Id.* (quoting *In re M.P.*, 639 S.W.3d at 704).

Ground D permits termination of parental rights "if the court finds by clear and convincing evidence . . . that the parent has . . . knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Ground E permits termination of parental rights "if the court finds by clear and convincing evidence . . . that the parent has . . . engaged in

conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E).

"'[E]ndanger' means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment . . . ." *In re E.N.C.*, 384 S.W.3d at 803 (citing *Tex. Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). "'[E]ndanger' means to expose to loss or injury; to jeopardize." *Boyd*, 727 S.W.2d at 533; *In re N.S.G.*, 235 S.W.3d 358, 367 (Tex. App.—Texarkana 2007, no pet.) (quoting *Boyd*, 727 S.W.2d at 533); *see In re L.E.S.*, 471 S.W.3d at 923. "It is not necessary that the conduct be directed at the child or that the child actually suffer injury." *In re L.E.S.*, 471 S.W.3d at 923.

When evaluating ground D, "we are to examine the time prior to [the child's] removal to determine whether the environment of the home posed a danger to [his] physical or emotional well-being." *In re D.R.*, 631 S.W.3d 826, 833 (Tex. App.—Texarkana 2021, no pet.) (quoting *In re L.E.S.*, 471 S.W.3d at 926). "Ground '(D) permits termination [of parental rights] based on a single act or omission [by the parent].'" *Id.* (alterations in original) (quoting *In re L.C.*, 145 S.W.3d 790, 797 (Tex. App.—Texarkana 2004, no pet.)). "[U]nlawful conduct by a parent . . . can create an environment that endangers the physical and emotional well-being of a child as required for termination under [Ground] (D)." *Id.* at 834 (alterations in original) (quoting *In re C.J.B.*, No. 05-19-00165-CV, 2019 WL 3940987, at *6 (Tex. App.—Dallas Aug. 21, 2019, no pet.) (mem. op.)).

Here, the record shows that Father was a convicted felon by the time the case began and that he was incarcerated "on a U. S. [sic] Marshal's detainer." "[U]nlawful conduct by persons

9

who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the 'conditions or surroundings' of the child's home under section D." *In re N.B.*, No. 06-12-00007-CV, 2012 WL 1605457, at *9 (Tex. App.—Texarkana May 8, 2012, no pet.) (mem. op.) (quoting *Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)). Due to his intentional criminal conduct, Father exposed Ian to the loss of a parent and a stable home environment while he was incarcerated. *See In re P.Y.*, 731 S.W.3d 672, 688 (Tex. App.—Houston [14th Dist.] 2026, no pet.) ("Intentional criminal activity that exposes a parent to incarceration is conduct that endangers the physical and emotional well-being of a child." (quoting *In re V.V.*, 349 S.W.3d 548, 554 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (en banc))). Because he was unable to care for Ian during his incarceration, Father was forced to leave Ian in Mother's care. We find this evidence legally and factually sufficient to support the trial court's ground D finding.

Next, "termination under [ground] (E) must be based on more than a single act or omission. Instead, a 'voluntary, deliberate, and conscious course of conduct by the parent is required.'" *In re L.E.S.*, 471 S.W.3d at 923 (quoting *Perez v. Tex. Dep't of Protective & Regul. Servs.*, 148 S.W.3d 427, 436 (Tex. App.—El Paso 2004, no pet.) (citing *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.); *Boyd*, 727 S.W.2d at 533; *In re N.S.G.*, 235 S.W.3d at 366–67)). "Ground E 'refers only to the parent's conduct, as evidenced not only by the parent's acts, but also by the parent's omissions or failures to act.'" *In re R.G.*, No. 06-24-00035-CV, 2024 WL 4142842, at *5 (Tex. App.—Texarkana Sept. 11, 2024, no pet.) (mem. op.) (quoting *In re S.K.*, 198 S.W.3d 899, 902 (Tex. App.—Dallas 2006, pet. denied)). "The

endangering conduct may also occur 'either before or after the child's removal by the Department.'" *Id.* (quoting *In re Z.J.*, No. 02-19-00118-CV, 2019 WL 6205252, at *11 (Tex. App.—Fort Worth Nov. 21, 2019, pet. denied) (mem. op.) (citing *Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied))). In our analysis under ground E, we may also consider a parent's failure to complete relevant requirements of a family-service plan. *In re Z.J.*, 2019 WL 6205252, at *11; *In re U.H.R.*, No. 07-18-00318-CV, 2019 WL 81874, at *5 (Tex. App.—Amarillo Jan. 2, 2019, no pet.) (mem. op.).

"'Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under' Ground E." *In re H.M.J.*, No. 06-18-00009-CV, 2018 WL 3028980, at *5 (Tex. App.—Texarkana June 19, 2018, no pet.) (mem. op.) (quoting *In re A.L.*, No. 06-14-00050-CV, 2014 WL 5204888, at *7 (Tex. App.—Texarkana Oct. 8, 2014, no pet.) (mem. op.) (quoting *Walker*, 312 S.W.3d at 617)). "A parent's failure to remain drug-free while under the Department's supervision will support a finding of endangering conduct under [Ground] (E) . . . ." *Id.* (quoting *In re J.A.W.*, No. 02-08-00215-CV, 2009 WL 579287, at *4 (Tex. App.—Fort Worth Mar. 5, 2009, no pet.) (per curiam) (mem. op.) (citing *Vasquez v. Tex. Dep't of Protective & Regul. Servs.*, 190 S.W.3d 189, 196 (Tex. App.—Houston [1st Dist.] 2005, pet. denied))). Further, "[a] fact-finder can reasonably infer that a parent is using drugs from that parent's refusal to submit to drug tests." *In re C.C.*, 720 S.W.3d at 64 n.28 (citing *In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Fort Worth 2003, no pet.); *In re A.V.*, 697 S.W.3d 657, 659 (Tex. 2024)).

11

Here, ample evidence shows that Father did not remain drug free during the pendency of the case. Father tested positive for cocaine, methamphetamine, and marihuana metabolite while the case was pending. Father also missed seven drug tests, which resulted in presumed positive tests. Father had a pending case for possession of marihuana and failed to complete required substance-abuse treatment. Father also had a pending case for failing to identify himself as a fugitive. From this clear and convincing evidence, the trial could conclude that Father engaged in conduct that endangered Ian's physical or emotional well-being. Accordingly, we find that the evidence was legally and factually sufficient to support the trial court's ground E findings.

Having found that legally and factually sufficient evidence supports the trial court's grounds D and E findings, we overrule Father's first point of error.

## IV.    Sufficient Evidence Supports the Best-Interests Finding

Next, Father argues that the trial court erred in its best-interests finding. In determining the best interests of the child, courts consider the following *Holley*[3] factors:

> (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) their plans for the child; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.

*In re A.A.*, 670 S.W.3d 520, 534 n.57 (Tex. 2023) (citing *Holley*, 544 S.W.2d at 372); *see In re E.N.C.*, 384 S.W.3d at 807. However, "the *Holley* factors are not a checklist[.]" *In re C.C.*, 720 S.W.3d at 59. "Consequently, the fact-finder may choose to give greater weight to one factor

---

[3] *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976).

over others." *Id.* Further, in the best-interest analysis, we may consider evidence used to support the grounds for termination of parental rights. *In re C.H.*, 89 S.W.3d at 28.

Ian was four years old at the time of trial, and the record does not contain Ian's wishes on his home placement. However, the record shows that Ian was thriving in a foster home along with his brother, that he was bonded to his foster parents, and that his foster parents were bonded to him and wished to adopt both him and his brother. As a result, we find that there was sufficient evidence for the trial court to determine that the first *Holley* factor weighs in favor of terminating parental rights. *See In re K.O.*, 488 S.W.3d 829, 840 (Tex. App.—Texarkana 2016, pet. denied).

As for the next three factors, we consider "that a parent is unable to provide adequate care for a child, lacks parenting skills, or exercises poor judgment." *In re M.C.*, 482 S.W.3d 675, 688 (Tex. App.—Texarkana 2016, pet. denied). Ian's emotional and physical needs were typical of a four-year-old child, but the record shows that Father was incarcerated more than once during the case and was unable to provide adequate care for Ian during his incarceration. "Parental drug abuse, which reflects poor judgment, is also a factor that may be considered when determining the child's best interest." *Id.* Father used drugs during the pendency of the case and refused drug testing, showing that he lacked the parental ability to obtain Ian's return. Because he was unable to provide for Ian's emotional and physical needs while on drugs or in jail, the record shows that Father was unable to provide Ian with a safe and stable home. Accordingly, we find that there was sufficient evidence for the trial court to determine that the second, third, and fourth *Holley* factors weigh in favor of terminating Father's parental rights.

13

As for the fifth factor, Father failed to take advantage of the programs available to assist him. Father had not completed the drug-treatment program recommended after his substance-abuse assessment, even though required by his family-service plan. As a result, we find that there was sufficient evidence for the trial court to determine that the fifth *Holley* factor weighs in favor of terminating Father's parental rights.

The sixth and seventh factors consider the plans for the children and stability of the home. Father did not present any evidence of his plans for Ian, and his continued positive and presumed positive drug tests show that he could not provide a drug-free environment for Ian. He is not Kaleb's parent, and nothing shows Father intended to keep Ian and Kaleb together. Further, there was no guarantee that Father could remain drug free, and Father also faced danger of continued incarceration due to pending criminal charges, which shows that his home would not be stable. The Department's plan was to terminate parental rights so that Ian and Kaleb could remain together in an adoptive home that accounted for all their needs. We find that there was sufficient evidence for the trial court to determine that the sixth and seventh factors weigh in favor of terminating Father's parental rights.

As for the last two factors, even though Father was out of jail for "long stretches of this case," Father did not visit Ian and only made telephone contact with him once for approximately five to six minutes, which shows that the existing parent-child relationship was not a proper one. While Father lacked transportation, there was no excuse for his continued drug use, which he knew could result in termination of his parental rights. Moreover, even though Father was aware of the trial date and had appeared in court many times before with his counsel, he failed to

14

appear for trial. Accordingly, we find that there was sufficient evidence for the trial court to determine that the remaining *Holley* factors weigh in favor of terminating Father's parental rights.

After viewing all of the evidence in the light most favorable to the best-interest findings, we conclude that it was sufficiently clear and convincing such that a reasonable fact-finder could have formed a firm belief or conviction that termination of the parent-child relationship between Father and Ian was in Ian's best interests. As a result, we overrule Father's last point of error.

## V.      Conclusion

We affirm the trial court's judgment.


                                                    Charles van Cleef
                                                    Justice


Date Submitted:      June 1, 2026
Date Decided:        July 10, 2026

15